UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>DENIS MESUMB     ) | No. 2:19 CR 34 |

### OPINION and ORDER

This matter is before the court on defendant's motion to suppress evidence. (DE # 23.) For the reasons that follow, the motion is granted.

**I.   FACTS**

Defendant Denis Mesumb was traveling by car on Interstate 94 on March 15, 2019, when he was pulled over for a traffic infraction by Porter County Officer Brian Taylor. Officer Taylor subsequent interactions with defendant were recorded by Officer Taylor's interior-facing and exterior-facing dashboard cameras ("dash cams"), and recordings from each were submitted by the Government. (DE # 27.)

The exterior-facing dash cam footage shows that near the beginning of the traffic stop, both Officer Taylor and defendant exit their vehicles and shake hands in poor weather. The interior-facing dash cam footage shows that defendant and Officer Taylor then enter Officer Taylor's patrol car, with Officer Taylor in the driver's seat and defendant in the front passenger seat. An easygoing, friendly-sounding conversation ensues. The pair comment on the inhospitable weather. Officer Taylor explains defendant's traffic errors, but tells defendant he does not intend to write defendant a

ticket. Defendant tells Officer Taylor about his travels, including attending his cousin's baby shower in St. Louis. Defendant informs the officer that he speaks French.

A few minutes later, Officer Taylor tells defendant it is taking a while to process his information on his computer, and again indicates that he does not intend to write a ticket. Officer Taylor then asks defendant if he is carrying a gun in the car. Defendant laughs, gestures towards his car with his palms up, and states: "You can, you can . . . [inaudible] . . . you can go there, sir." Simultaneously, Officer Taylor says, "No guns? Okay good." Then, Officer Taylor asks, "I can search the car?" At this point, defendant raises his hands with the palms facing the windshield. He also speaks, though the parties disagree about what he says. The Government contends that he says: "You can go." (DE # 26 at 2.) Defendant argues that he actually stated: "No, you can't." Having reviewed the recording carefully, multiple times, the court's interpretation of defendant's words at this moment are: "No, you can't."[1] Officer Taylor then asks, "Nothing illegal?" Defendant replies, "No, no."

Officer Taylor then asks defendant if he has any large amounts of cash in the car. Defendant says he does not, pulls out his wallet, and the two laugh. Officer Taylor then says, "Just hang tight here for me, okay? I'll wait and, uh, until the information comes back, and while I'm doing that, I'll search the car." Officer Taylor exits the vehicle. Thereafter, defendant, who is still seated in the patrol car's passenger seat, opens the

---

[1] It is difficult to understand how the Government could possibly interpret defendant's statement at this point as "You can go." Such an interpretation strains credulity.

patrol car's passenger door and appears to use his key fob to remotely unlock the doors to the car so that Officer Taylor can open them.

After a few minutes, Officer Taylor returns to the vehicle and places defendant in handcuffs. He informs defendant that he is not under arrest, only detained. Officer Taylor then resumes searching the vehicle. Approximately eight minutes later, Officer Taylor returns to the patrol car and recites *Miranda* warnings to defendant. Officer Taylor then tells defendant that he "found the trap, okay, I found the compartment." Defendant nods. Officer Taylor says he does not want to destroy the vehicle, but "we are going to get into it." Defendant nods again. Officer Taylor asks defendant to tell him what is inside the compartment. When defendant says nothing, Officer Taylor says, "It's money, right?" Defendant continues to remain silent. Officer Taylor then touches defendant's shoulder, and states: "Look at me. You're a good man, yeah, I respect you. I've been fair with you, right?" Defendant responds: "Very fair." Then Officer Taylor says, "It's money, right? How much money?" Defendant then makes a number of incriminating statements. Ultimately, a canine unit "free air sniff" and subsequent full search of the vehicle yielded forty-seven kilograms of cocaine.

Defendant has moved to suppress the contents of his vehicle and his statements to law enforcement. (DE # 23.) The matter is fully briefed and ripe for ruling. (DE ## 26, 34.) The court declines to hold an evidentiary hearing on the matter because, after review of all memoranda, exhibits, and supporting documents, there exist no disputed

3

issues of material fact which would affect the outcome of the motion. *United States v. McGaughy,* 485 F.3d 965, 969 (7th Cir. 2007).

## II. ANALYSIS

Defendant moves to suppress evidence against him as having been obtained in violation of his Fourth Amendment rights. The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. When a search or seizure violates the Fourth Amendment, the exclusionary rule requires the suppression of any resulting evidence, unless certain exceptions, not implicated in this case, apply. *Utah v. Strieff,* 136 S. Ct. 2056, 2061 (2016).

Where a search was made without a warrant, as was the case here, the Government must show by a preponderance of the evidence that the search was otherwise reasonable under the Fourth Amendment. *United States v. Saadeh,* 61 F.3d 510, 517 (7th Cir. 1995). Certain warrantless searches are reasonable, including those conducted with the suspect's consent. *Illinois v. Rodriguez,* 497 U.S. 177, 183–84 (1990). It is the Government's burden to prove by a preponderance of the evidence that the defendant consented to the disputed search. *United States v. Thurman,* 889 F.3d 356, 366 (7th Cir. 2018).

The Government argues that defendant consented to the search of his vehicle by initially stating, in response to Officer Taylor's question regarding the existence of guns in the car: "You can go there, sir." However, even if this were true, no consent is irrevocable. *Florida v. Jimeno,* 500 U.S. 248, 252 (1991) ("A suspect may of course delimit

4

as he chooses the scope of the search to which he consents."); *United States v. Jachimko*, 19 F.3d 296, 299 (7th Cir. 1994) (consent may be withdrawn); *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir. 1986) ("Clearly a person may limit or withdraw his consent to a search, and the police must honor such limitations."). Any consent defendant may have initially given by saying "You can go there, sir" was withdrawn when defendant stated "No, you can't."

The Government argues that defendant also consented when he used his key fob to remotely unlock the car doors for Officer Taylor. However, in this case, defendant's act of unlocking the car doors occurred immediately after Officer Taylor states "[H]ang tight here for me . . . I'll search the car," gets out of the patrol car, and proceeds to defendant's vehicle. Given these circumstances, the Government bears the burden of showing that the voluntariness of defendant's consent arose from more than mere "acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968).

When an improper claim to authority precedes a defendant's consent, the proper inquiry is whether such claims of authority outweigh other factors suggesting consent was voluntary. *United States v. McGraw*, 571 F.3d 624, 629 (7th Cir. 2009). Other factors bearing on this inquiry include: (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by

5

repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent. *Id.*

In *McGraw,* the court found that, despite the officer's implication that he possessed a right to search the defendant's residence without permission, a balance of all factors showed that the defendant demonstrated voluntary consent where he readily and calmly allowed entrance after the officer specifically and unambiguously requested the right to enter the apartment. 571 F.3d at 629. By contrast, in *United States v. Nafzger,* 965 F.2d 213, 216 (7th Cir. 1992), the court held that the district court should have suppressed evidence discovered after police flashed a defective search warrant for a vehicle and defendant thereafter submitted to a search of his entire premises. The court in *Nafzger* emphasized that "[t]he warrant's effect on Nafzger's ability to assess whether or not he could refuse the search is the threshold question." *Id.* at 216.

This case is distinguishable from *McGraw*. In *McGraw,* the defendant's act of allowing entrance followed a specific request from the officer, whereas in this case, defendant's act of pressing the key fob occurred after Officer Taylor's statement which presumed authority. (Notably, when Officer Taylor *did* specifically inquire about permission to search the vehicle, defendant's response was "No, you can't.") At the relevant point in the conversation, Officer Taylor did not inquire about or seek defendant's consent. He simply stated that he was going to conduct a search, and proceeded as though he was entitled to do so. Defendant followed suit.

6

Like the defendant in *Nafzger*, defendant conceded to a display of authority despite that authority being falsely claimed. 965 F.2d at 216. Like the defective warrant in *Nafzger*, Officer Taylor's statement of "hang tight here for me . . . I'll search the car" affected defendant's ability to assess whether or not he could impede Officer Taylor's search. *Id.* at 216. Defendant's act of supposed consent did not occur after a specific and unambiguous request like in *McGraw*, but rather immediately after a display by an officer conveying that a search *would* occur, with or without defendant's assistance, like in *Nafzger*.

Further, an examination of all the specific factors of this case demonstrate that this case should be resolved like *Nafzger*, not *McGraw*. On one hand, defendant appears to be an intelligent adult who was not subject to a lengthy detention, who was not yet in custody at the time of the relevant action, and who appears to have immediately volunteered his assistance without any physical coercion. However, on the other hand, defendant appears to be neither a native speaker of English nor a resident of the United States, had not yet been read any rights, and was sitting directly beside an officer inside a patrol car when the officer instructed him to remain in place while the officer searched his car. After weighing all factors and examining relevant precedent, the court concludes that the Government has not met its burden of demonstrating that defendant's use of the key fob was a voluntary consent to the subsequent search.

Because the Government has not demonstrated that defendant consented to the search of his vehicle, the court concludes that the warrantless search was unreasonable

7

and violated defendant's Fourth Amendment rights. Thus, the exclusionary rule requires the suppression of any resulting evidence. *Strieff,* 136 S. Ct. at 2061. The court must suppress all evidence discovered inside the vehicle; it must also suppress defendant's subsequent statements to law enforcement, as it is clear to the court (and the Government has not otherwise argued) that the compartment found in the vehicle as a result of the illegal search triggered defendant's subsequent admissions. *Strieff,* 136 S. Ct. at 2061 (evidence later discovered and found to be derivative of an illegality is inadmissible as "fruit of the poisonous tree"); *Nafzger,* 965 F.2d at 217; *United States v. Nikrasch,* 367 F.2d 740, 744 (7th Cir. 1966).

### III. CONCLUSION

For the foregoing reasons, defendant's motion to suppress (DE # 23) is **GRANTED**.

                              **SO ORDERED.**

Date: June 11, 2020

                          s/James T. Moody
                          JUDGE JAMES T. MOODY
                          UNITED STATES DISTRICT COURT